STATE OF CONNECTICUT *v.* HERMAN KEEBY

STATE OF CONNECTICUT *v.* LEWELYN M. BURTON

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued October 16—decided December 3, 1969—reargued
February 4, 1970—substitute opinion filed
February 18, 1970

*Kevin W. Conway,* special public defender, for the appellant (defendant) in each case.

*Edmund W. O'Brien,* state's attorney, for the appellee (state) in each case.

KING, C. J. The defendant Herman Keeby was tried to the jury on an information in two counts. The first count charged a theft of a motor vehicle in violation of § 53-57 of the General Statutes (Rev. to 1968), and the second count charged illegal possession of narcotics in violation of § 19-246 of the General Statutes, as amended by § 1 of No. 485 of the Public Acts of 1959. The defendant Keeby was acquitted on the first count and convicted on the second (narcotics) count, and from the judgment on the second count he has appealed.

Lewelyn M. Burton, a passenger in the front seat of the Keeby car, was separately informed against but apparently was tried jointly with Keeby and was similarly convicted on the second count. By stipulation it was agreed that the Keeby appeal alone would be presented in this court but that our judgment in the Keeby appeal should be conclusive in the Burton appeal. For convenience, we shall refer to Keeby as the defendant.

In his request for a finding, the defendant listed as the errors he wished reviewed (1) the overruling of a motion to suppress as evidence certain narcotics seized without a warrant and (2) their admission as evidence at the trial. [See General Statutes § 54-33f (Rev. to 1968), since amended by No. 292

of Public Acts of 1969.] While the denial of the motion to suppress made it unnecessary, in the absence of a change of circumstances, to hear the evidence as to that issue again, the court did so and held the narcotics admissible. See cases such as *State* v. *Mariano,* 152 Conn. 85, 91, 203 A.2d 305, cert. denied, 380 U.S. 943, 85 S. Ct. 1025, 13 L. Ed. 2d 962. Under this procedure, the ruling denying the motion to suppress was superseded by the evidential ruling made during the trial admitting the narcotics, and this ruling, alone, need be discussed. Quite properly it is the only ruling attacked in the defendant's brief.

In a single, long paragraph of the finding is a statement as to the ruling made during the trial admitting into evidence, over the defendant's objection, the narcotics (heroin) seized. This finding consists largely of a recital of some of the testimony of the state police officer who had stopped the car, arrested the defendant together with the defendant Burton, and made the search. In an effort to overcome the inadequacy of the finding, we have added a few facts mentioned in each brief which thus became undisputed.

The testimony of the officer may be rather briefly summarized, insofar as it was made available to us. On April 28, 1967, at about 6 o'clock in the evening, a 1967 blue Grand Prix Pontiac automobile was being operated by the defendant in an easterly direction on the Connecticut Turnpike in East Lyme. The car was stopped by the state police officer because he thought its operator was exceeding the speed limit. The car displayed plates indicating a Massachusetts registration, L 48531. The officer told the defendant that he intended to give him a written warning as he felt there had been an in-

sufficient "clock" on the speed to justify an actual arrest for speeding. He also asked for the defendant's operator's license, which was produced, and for the registration, which the defendant, after searching around in the car and in its trunk, was unable to find and did not produce. The defendant first told the officer that he (Keeby) owned the car, but later he claimed that it belonged to Henry Stampley of Dorchester, Massachusetts. All this aroused the officer's suspicions, and he then radioed the police barracks for a check on the registration and was informed that the Pontiac car (although misdescribed as a GTO rather than a Grand Prix model) was listed as having been recently stolen in Dorchester. He arrested both Keeby and Burton, removed them to the police cruiser, and handcuffed them together in the rear seat. The defendant makes no claim that the officer was not fully justified in stopping the car and asking the defendant to produce his operator's license and registration certificate.

In the original opinion in this case, announced on December 16, 1969, a new trial was ordered owing to deficiencies in the finding which made it impossible for us to determine whether there had been a compliance with the rules laid down in *Chimel* v. *California,* 395 U.S. 752, 762, 89 S. Ct. 2034, 23 L. Ed. 2d 685, which restricted the scope of a warrantless search incidental to a lawful arrest to the arrestee's person and to the area from within which he might obtain either a weapon or something which could have been used as evidence against him. The state filed a motion for reargument in which it claimed, inter alia, (1) that the rule laid down in the *Chimel* case had no application to a search of a motor vehicle, (2) that, even if it could be held applicable

at all to such a search, it had no application in the present case because it did not affect searches or seizures which predated June 23, 1969, the date of the *Chimel* decision, and (3) that without regard to the *Chimel* case, the search was legal under the rationale of *Cooper* v. *California,* 386 U.S. 58, 87 S. Ct. 788, 17 L. Ed. 2d 730. The United States Supreme Court has thus far failed to state whether the *Chimel* case would be given any retrospective effect so as to apply to any searches or seizures conducted prior to June 23, 1969. *Von Cleef* v. *New Jersey,* 395 U.S. 814, 89 S. Ct. 2051, 23 L. Ed. 2d 728; *Shipley* v. *California,* 395 U.S. 818, 89 S. Ct. 2053, 23 L. Ed. 2d 732. This failure in turn has forced the state and federal courts to determine as best they could the likelihood of *Chimel's* being given any retrospective application and, if so, to what extent. As might be expected, there is not a complete harmony in the decisions. Cases holding that *Chimel* is probably not going to be applied to searches and seizures prior to June 23, 1969, include *People* v. *Edwards,* 80 Cal. Rptr. 633, 458 P.2d 713, and *Scott* v. *State,* 7 Md. App. 505, 256 A.2d 384. Cases giving *Chimel* a retroactive application to searches and seizures prior to that date include *State* v. *Rhodes,* 80 N.M. 729, 460 P.2d 259, and *Fresneda* v. *State,* 458 P.2d 134, 143 (Alas.).

We have decided that the most probable holding of the United States Supreme Court, if and when it decides the question, will be that the *Chimel* doctrine applies only to searches and seizures conducted after June 23, 1969. The grounds for reaching this decision are succinctly stated in *United States* v. *Bennett,* 415 F.2d 1113, 1114 (2d Cir.). Thus, we decide this case without regard to any change in the law made by the *Chimel* case.

Incidentally, it thus becomes unnecessary to pass upon the claim of the state, which we rejected in our original opinion, that the *Chimel* case had no application to searches and seizures of motor vehicles.

It is important to bear in mind, however, that the burden of justifying a warrantless search is on the state. Although this was reiterated in the *Chimel* case, it was the settled rule even before *McDonald* v. *United States,* 335 U.S. 451, 456, 69 S. Ct. 191, 93 L. Ed. 153, which was decided in 1948. This burden makes necessary a finding which is reasonably adequate to show justification for a warrantless search, where the state, as in the present case, relies on such a search.

When information came to the officer over the teletype that the car was a stolen car, he had probable cause for arresting the defendant for theft of the automobile. *State* v. *Towles,* 155 Conn. 516, 520, 235 A.2d 639. Theft of an automobile carries a maximum penalty on a first offense of fifteen years in the state prison. General Statutes (Rev. to 1968) § 53-57. Obviously it is a felony as defined in General Statutes (Rev. to 1966) § 1-1. And since larceny is a continuing offense, operating a stolen car within Connecticut would constitute a theft of that car in Connecticut regardless of where the defendant had first stolen it. *State* v. *Benson,* 153 Conn. 209, 218, 214 A.2d 903; *State* v. *Palkimas,* 153 Conn. 555, 561, 219 A.2d 220; *State* v. *Ellis,* 3 Conn. 185, 186. Thus, if, as the officer had probable cause to believe, the car had been stolen, the crime of theft of the car was being committed in Connecticut at the very moment that the arrest was made. Under § 6-49 of the General Statutes (Rev. to 1966), an arrest without a warrant could be made here on two grounds: (1)

that the defendant was taken or apprehended in the act and (2) under the speedy information provision of that statute as construed in cases such as *State* v. *Carroll,* 131 Conn. 224, 231, 38 A.2d 798, and *State* v. *Williams,* 157 Conn. 114, 118, 249 A.2d 245. See also *State* v. *Benson,* supra, 217; *Smith* v. *United States,* 358 F.2d 833, 835 (D.C. Cir.). Indeed the defendant quite properly makes no claim of illegality in his arrest without a warrant. His basic claim is that it was not shown that the narcotics were discovered in the course of a valid search incidental to an arrest for theft of the motor vehicle under the rule of cases such as *Preston* v. *United States,* 376 U.S. 364, 367, 84 S. Ct. 881, 11 L. Ed. 2d 777.

After the arrest of the defendants, and while they were handcuffed together in the rear seat of the police car, the police officer returned to the defendant's car and searched it thoroughly, as he testified, "for contraband or weapons". It was in the course of this search that the officer found, on the floor under the passenger's seat, the heroin which was the subject matter of the second count of the information.

Cases involving the search of a motor vehicle following the operator's arrest for a traffic violation are collected in an annotation in 10 A.L.R.3d 314, and a summary discussion of the decisions of the United States Supreme Court as to warrantless searches of motor vehicles may be found beginning on page 319. Perhaps the most complete recent (1969) collection of cases involving the whole subject of the right of search of motor vehicles is to be found in Hotis, "Search of Motor Vehicles," 73 Dickinson Law Review, 363.

Probable cause for an arrest and an incidental search or seizure may exist even though the evidence

would not be sufficient to convict. *Brinegar* v. *United States,* 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879; *State* v. *Sweeney,* 157 Conn. 485, 488, 255 A.2d 622; *State* v. *Towles,* 155 Conn. 516, 520, 235 A.2d 639. When the Keeby car was searched, the officer had correctly determined that he had probable cause to believe that the car had been stolen. Thus, an on-the-spot search for evidence of ownership of the car would be a search for evidence of the crime of theft of the car and might well be legal without any warrant under the rule of cases such as *Preston* v. *United States,* supra.

Although the general finding does indicate that the state offered evidence before the jury to prove that during the course of his search of the car the officer found, in the console between the two front seats, an application for a registration of the car in New York, together with some parking tickets, the court itself, on the issue of the admissibility of the narcotics, made no finding on that point, and we have no way of knowing what, if any, of this testimony was credited by the court. We are unable, under the available facts, to determine that the state showed that the narcotics were discovered in the course of a valid search incidental to an arrest as distinguished from a search which went beyond the proper limits of such a search. See *Cooper* v. *California,* 386 U.S. 58, 60, 87 S. Ct. 788, 17 L. Ed. 2d 730; *Preston* v. *United States,* 376 U.S. 364, 367, 84 S. Ct. 881, 11 L. Ed. 2d 777. This requires that we turn to the state's third claim, which is that the search was valid as a custodial search or examination of the car.

The car was the subject matter, and, so, was also evidence, of the specific crime of theft for which the defendant had been properly arrested. Under the

common law and without the necessity of any statutory implementation, the car could be seized without any warrant. *Boyd* v. *United States,* 116 U.S. 616, 623, 6 S. Ct. 524, 29 L. Ed. 746; *Warden* v. *Hayden,* 387 U.S. 294, 303, 87 S. Ct. 1642, 18 L. Ed. 2d 782; Hotis, "Search of Motor Vehicles," 73 Dick. L. Rev. 363, 385. Even if the car had been seized as "mere evidence" of the crime of theft, its seizure would have been valid. *Warden* v. *Hayden,* supra, 301. The problem in the instant case, however, is not the seizure of the car but the seizure of the narcotics.

We think the claim of the state that the search should be sustained as valid on the authority of cases such as *Cooper* v. *California,* supra, 61, is sound. The search here was a search of a car which police were lawfully holding as the actual subject matter, or fruit, of the crime of theft.

As we understand the *Cooper* case, the car there was being held under a state forfeiture statute as an instrumentality used in the transportation of narcotics. The search of the car was not made at the time of Cooper's arrest but about a week later while the car was being held in police custody. In the *Cooper* case, the search was held to be valid, as a reasonable search, since "we cannot hold unreasonable under the Fourth Amendment the examination or search of a car validly held by officers for use as evidence in a forfeiture proceeding." *Cooper* v. *California,* supra, 62. We see no valid ground of distinction, so far as a warrantless custodial search is concerned, between the Cooper car, which was being held in police custody under a forfeiture procedure, and the defendant's car, which was also being held in police custody as the subject matter, or fruit, of the crime for which the defendant had been ar-

rested and presumably ultimately would be tried. Certainly it would have been an absurdity to return the car to the defendant prior to the conclusion of the proceedings incident to the charge of its theft. Even though the meager facts available to us are inadequate to show that the narcotics were discovered in the course of a valid search incidental to an arrest for the theft of the automobile, the available facts are adequate to show that the narcotics were validly seized under the *Cooper* doctrine since they were discovered in a reasonable search or examination of a car which the police were holding, and at least as a practical matter were required to hold, as the subject matter or fruit of the crime of theft.

As pointed out in *Cooper* v. *California,* 386 U.S. 58, 61, 87 S. Ct. 788, 17 L. Ed. 2d 730, this was no mere valid custody of an automobile, wholly disconnected from the crime for which its operator had been arrested, being held for his convenience and which at any time, upon request, would be returned to him, or his designated agent, as was the situation in *Preston* v. *United States,* 376 U.S. 364, 367, 84 S. Ct. 811, 11 L. Ed. 2d 777. See also *Dyke* v. *Taylor Implement Co.,* 391 U.S. 216, 221, 88 S. Ct. 1472, 20 L. Ed. 2d 558. Here, the defendant's car was held not merely as evidence of the crime of theft but as the subject matter, or fruit, of that crime. We think that under the *Cooper* doctrine the car could be subjected to a reasonable search or examination without a warrant while it was being necessarily held in police custody and that it was entirely reasonable, if not necessary, that this search or examination include the search for "contraband or weapons." A search was required in order (1) to make certain that the car contained no dangerous explosives or

firearms, (2) to protect the police from claims of the owner that contents of the car were missing, and (3) to make it, or photographs taken of it, admissible as evidence at the trial by precautions required to establish that the car, including its contents, had remained in an unchanged condition since the defendant's original apprehension under the familiar rule of evidence as set forth in cases such as *Cunningham* v. *Fair Haven & W.R. Co.*, 72 Conn. 244, 249, 43 A. 1047.

As pointed out in *State* v. *Carter*, 54 N.J. 436, 255 A.2d 746, 753, the car having been seized as the subject matter of the crime for which the valid arrest had been made and having been validly held in custody for its evidential value, there was no more reason to require a warrant to search or examine this subject matter or fruit of the crime of theft than to require a warrant "to examine or test a weapon, or to open the brown bag or valise seized as an instrument used in a bank robbery to see if the stolen money is there." *State* v. *McKnight*, 52 N.J. 35, 57, 243 A.2d 240.

It may be difficult to reconcile some of the language in the *Cooper* case with some of the language in the earlier case of *Preston* v. *United States*, supra, as the dissenting opinion in the *Cooper* case points out (p. 63), but *Cooper* was decided after *Preston* and to the extent of any inconsistency would control. We conclude that at least where, as here, we are not applying the *Chimel* rules, the search of the car which turned up the narcotics was legal as a custodial search under *Cooper* v. *California*, 386 U.S. 58, 87 S. Ct. 788, 17 L. Ed. 2d 730, even though it is not clear from the finding that the search, although substantially coincidental with the arrest in place and time, was a search for evidence of the crime

of theft so as to be justifiable, under the *Preston* rule, as a search incidental to the defendant's arrest.

There is no error.

In this opinion the other judges concurred.