## STATE OF CONNECTICUT *v.* RICHARD A. KRAUSE

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and FITZGERALD, Js.

Argued February 3—decided May 11, 1972

*Zbigniew S. Rozbicki,* for the appellant (defendant).

*Peter W. Gillies,* special assistant state's attorney, with whom, on the brief, was *Vincent J. Scamporino,* state's attorney, for the appellee (state).

SHAPIRO, J. On a trial to the jury the defendant was found guilty of administering and possessing narcotic drugs in violation of General Statutes §§ 19-480 (a) and 19-481 (a). The defendant made a motion for judgment notwithstanding the verdict because the verdict was not supported by the evidence presented. The motion was denied and a judgment was rendered on the verdict. In his appeal from the judgment rendered, in oral argument, the defendant has abandoned all assignments of error except that portion of the assignment which challenges the ruling of the trial court denying his motion to suppress the admission of certain evidence claimed to have been obtained in violation of his rights under the fourth amendment to the constitution of the United States. The facts on which we determine the merits of the defendant's claim and test the trial court's ruling are those recited in the finding of that court, which have not been attacked by the defendant. Practice Book § 648; *State* v. *Mahmood,* 158 Conn. 536, 537, 265 A.2d 83; *State* v. *Hanna,* 150 Conn. 457, 462, 191 A.2d 124.

The court found the following facts: On December 13, 1968, members of the state police set up a stakeout of the premises located at 26 Shunpike Road in the town of Cromwell to apprehend two felons who had escaped from the Haddam state jail. It was believed that one of the escapees had a woman friend living at the Cromwell premises. An

automobile owned by one of the escapees was parked across the street from the premises under surveillance. At about 7 o'clock that evening Troopers Robert F. West and John R. Witte commenced their observations of the premises from a construction trailer across the street. At about 9:30 p.m., a motor vehicle passed the house at a very slow rate of speed. A woman emerged from the house and told one of the occupants of the house to turn the lights on and off, and the lights were flashed on and off five or six times. The vehicle then turned around and parked in front of the house. Four people emerged from the vehicle and entered the house. The officers were unable to distinguish these persons because of the poor lighting in the area, but Trooper Witte was able to determine that two were men and two were women. The officers believed that the vehicle's two male occupants who had entered the house could have been the two escapees for whom they were searching.

Trooper West then crossed the street to the house. As he approached the house he was able to observe the defendant in the bathroom of the house inserting a needle into the left forearm of a woman companion. This was the same woman who earlier had emerged from the house and who had directed the turning on and off of the lights. He then observed the defendant clean the needle in the sink and insert it into his own arm. He observed a bulb on the end of a syringe which was being squeezed as the needle was inserted into the arm of the woman and the arm of the defendant. He believed that the defendant and his companion were in the process of taking heroin. West, in the company of Sergeant Harrington and Witte, knocked at the door of the house and the three were admitted. The defendant

and the woman who had been his companion in the bathroom episode were placed under arrest by West. The woman's arm and that of the defendant were examined and each disclosed a fresh puncture mark about the size made by a needle and over which appeared a bubble. Trooper Witte seized the materials previously observed by Trooper West in the bathroom. These materials included, among other things, two hypodermic needles, a syringe, a glass medicine dropper, and a quantity of morphine, heroin and quinine. On December 20, 1968, these materials were turned over to Abraham Stolman, chief toxicologist of the state, for examination. The materials which were seized in the bathroom by Witte were the subjects of the defendant's unsuccessful motion to suppress as evidence.

The defendant's basic contention, as raised in his assignment of errors, is that the trial court erred in denying his motion to suppress evidence because the same was obtained as a result of an intrusion and observation in violation of the defendant's rights under the fourth amendment to the United States constitution. The defendant argues in his brief that the facts in the present case required the police to procure a search warrant for the premises already described and the failure to do so is sufficient to render the search unlawful.

In his dissenting opinion in *Harris* v. *United States,* 331 U.S. 145, 168, 67 S. Ct. 1098, 91 L. Ed. 1399, Mr. Justice Frankfurter traced the history of the fourth amendment and noted: "The only exceptions to the safeguard of a warrant issued by a magistrate are those which the common law recognized as inherent limitations of the policy which found expression in the Fourth Amendment—where circumstances preclude the obtaining of a warrant

(as in the case of movable vehicles), and where the warrant for the arrest of a person carries with it authority to seize all that is on the person, or is in such open and immediate physical relation to him as to be, in a fair sense, a projection of his person." A year later, in 1948, Mr. Justice Jackson's one-sentence dictum in *Johnson* v. *United States,* 333 U.S. 10, 14, 68 S. Ct. 367, 92 L. Ed. 436, stated: "There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for a search may be dispensed with."

In 1948, the Supreme Court suggested that such an exceptional situation might occur "where the officers, passing by on the street, hear a shot and cry for help and demand entrance in the name of the law." *McDonald* v. *United States,* 335 U.S. 451, 454, 69 S. Ct. 191, 93 L. Ed. 153. The burden of proving an emergency would rest with the state. *United States* v. *Jeffers,* 342 U.S. 48, 51, 72 S. Ct. 93, 96 L. Ed. 59; *McDonald* v. *United States,* supra, 456.

Several exceptions have been created to the warrant requirement under the emergency, exigency and other theories. They are essentially "well recognized exceptions"; *Chimel* v. *United States,* 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685, rehearing denied, 396 U.S. 869, 90 S. Ct. 36, 24 L. Ed. 2d 124; which allow a search without a warrant, (see *Vale* v. *Louisiana,* 399 U.S. 30, 34, 90 S. Ct. 1969, 26 L. Ed. 2d 409), and "[t]he exceptions . . . have been jealously and carefully drawn." *Jones* v. *United States,* 357 U.S. 493, 499, 78 S. Ct. 1253, 2 L. Ed. 2d 1514. Only in "certain carefully defined classes of cases" is a warrantless search acceptable. *Camara* v. *Municipal Court,* 387 U.S. 523, 528, 87 S. Ct. 1727,

18 L. Ed. 2d 930; *Mancusi* v. *DeForte,* 392 U.S. 364, 370, 88 S. Ct. 2120, 20 L. Ed. 2d 1154. Whether an exception to the warrant requirement should be made "depends in part upon whether the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search." *Camara* v. *Municipal Court,* supra, 533. The United States Supreme Court has repeatedly emphasized that mere convenience or saving of time will not excuse the failure to obtain a warrant. Some element of emergency must exist which would render a search ineffective if delayed by the time necessary to get a warrant. In *United States* v. *Jeffers,* supra, 52, the court found no emergency because there was no question of violence, or the destruction or removal of evidence. In *Chapman* v. *United States,* 365 U.S. 610, 615, 81 S. Ct. 776, 5 L. Ed. 2d 828, the court would not find exigency because "[n]o suspect was fleeing or likely to take flight. The search was of permanent premises, not a movable vehicle. No evidence or contraband was threatened with removal or destruction."

Under certain circumstances, evidence in plain view may be seized without a search warrant. "It is well established that under certain circumstances the police may seize evidence in plain view without a warrant. But it is important to keep in mind that, in the vast majority of cases, *any* evidence seized by the police will be in plain view, at least at the moment of seizure. The problem with the 'plain view' doctrine has been to identify the circumstances in which plain view has legal significance rather than being simply the normal concomitant of any search, legal or illegal.

"An example of the applicability of the 'plain view' doctrine is the situation in which the police

have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character. Cf. *Go-Bart Importing Co.* v. *United States,* 282 U.S. 344, 358 [51 S. Ct. 153, 75 L. Ed. 374]; *United States* v. *Lefkowitz,* 285 U.S. 452, 465 [52 S. Ct. 420, 76 L. Ed. 877]; *Steele* v. *United States,* 267 U.S. 498 [45 S. Ct. 414, 69 L. Ed. 757]; *Stanley* v. *Georgia,* 394 U.S. 557, 571 [89 S. Ct. 1243, 22 L. Ed. 2d 542] (Stewart, J., concurring in result). Where the initial intrusion which brings such an article within plain view of the police is supported not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate. Thus the police may inadvertently come across evidence while in 'hot pursuit' of a fleeing suspect. *Warden* v. *Hayden,* . . . [387 U.S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782]. Cf. *Hester* v. *United States,* 265 U.S. 57 [44 S. Ct. 445, 68 L. Ed. 898]. And an object which comes into view during a search incident to arrest that is appropriately limited in scope under existing law may be seized without a warrant. *Chimel* v. *California,* 395 U.S. 752, 762–763 [89 S. Ct. 2034, 23 L. Ed. 2d 685]. Finally, the 'plain view' doctrine has been applied where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object. *Harris* v. *United States,* 390 U.S. 234 [88 S. Ct. 992, 19 L. Ed. 2d 1067]; *Frazier* v. *Cupp,* 394 U.S. 731 [89 S. Ct. 1420, 22 L. Ed. 2d 684]; *Ker* v. *California,* 374 U.S. 23, 43 [83 S. Ct. 1623, 10 L. Ed. 2d 726]. Cf. *Lewis* v. *United States,* 385 U.S. 206 [87 S. Ct. 424, 17 L. Ed. 2d 312]." *Coolidge* v. *New Hampshire,* 403 U.S. 443, 465–66, 91 S. Ct. 2022, 29 L. Ed. 2d 564.

"It has long been settled that objects in the plain

view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris* v. *United States,* 390 U.S. 234, 236, 88 S. Ct. 992, 19 L. Ed. 2d 1067. Where a police officer was legally justified in stopping an automobile, and in making a license and registration check he observed certain articles on the floor of the vehicle, we held that "[h]is observation of these items did not constitute an unlawful search and seizure inasmuch as they were in plain view." *State* v. *Cobuzzi,* 161 Conn. 371, 377, 288 A.2d 439; see also *State* v. *Smith,* 157 Conn. 351, 355, 254 A.2d 447.

In the case at bar, it is apparent from the facts in the unattacked finding that the police officers were at a place where they had a right to be. West was in the process of searching for the two escaped felons when he observed the defendant in the bathroom. At the time, he was not searching for evidence against the defendant but rather came on the bathroom scene inadvertently. He observed not only that items of contraband were in plain view but also that the parties were involved in the commission of a crime. While it is clear that the mere observation of contraband within the confines of a house will not justify entry into that house, it is equally clear that when a crime is committed in the presence of a police officer he may make a proper entry into any structure to effectuate an arrest. *Coolidge* v. *New Hampshire,* supra, 468; *Ker* v. *California,* 374 U.S. 23, 37, 83 S. Ct. 1623, 10 L. Ed. 2d 726. The visual observations of the crime provided probable cause for arrest and entry into the home. Once there, the seizure of the items, which immediately before had been in plain view through the window, was proper and correct. Thus, under

the "plain view" exception, we conclude that the evidence sought to be suppressed was properly seized and that there was no violation of the defendant's fourth amendment rights. The trial court was correct in denying the defendant's motion to suppress evidence because the same was not obtained as a result of violating the defendant's rights under the fourth amendment to the constitution of the United States.

There is no error.

In this opinion the other judges concurred.