STATE OF CONNECTICUT *v.* FREDERICK SCHONAGEL
(10498)

SPEZIALE, C. J., PETERS, HEALEY, SHEA and GRILLO, Js.

Argued December 8—decision released April 26, 1983

*Daiga G. Osis* and *Salvatore C. DePiano,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Frank S. Maco,* assistant state's attorney, for the appellee (state).

PETERS, J.   The principal issue in this case is the admissibility into evidence of certain items seized, on a suspicion of arson, during a belated warrantless search of burnt-out premises.  The defendant, Frederick Schonagel, is appealing from his conviction, after a jury trial, of conspiracy to commit

arson in the second degree in violation of General Statutes §§ 53a-48 (a) and 53a-112 (a) (1) (B) (2).[1]

The jury could reasonably have found the following facts. The defendant owned and operated Tire City, a tire dealership located in two main structures on Boston Avenue in Bridgeport. The defendant had insured the business in an amount in excess of $500,000. On Thursday, September 22, 1977, the defendant procured the services of a Tire City employee, Anderson Velasquez, and his younger brother, John Velasquez, to set fire to the premises. Urging them to obtain six five-gallon containers full of gasoline, the defendant promised to pay the Velasquez brothers $20,000 out of the $500,000 insurance payment he hoped to collect. Later that evening, the defendant gave Anderson the keys to Tire City, as well as more detailed instructions on how to set the fire.

Around midnight, the Velasquez brothers drove to Tire City. They poured gasoline from the containers throughout the two buildings, leaving trails of the flammable liquid to the entrances. At around 3 a.m. on Friday, September 23, 1977, the gasoline ignited, causing a tremendous explosion. Anderson

---

[1] "[General Statutes] Sec. 53a-48. CONSPIRACY. RENUNCIATION. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

"[General Statutes (Rev. to 1979)] Sec. 53a-112. ARSON IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of arson in the second degree when he starts a fire or causes an explosion: (1) With intent to destroy or damage a building . . . (B) whether his own or another's, to collect insurance for such loss; and (2) such act subjects another person to a substantial risk of bodily injury or another building to a substantial risk of destruction or damage."

fled, John was knocked unconscious, and in the ensuing conflagration both buildings were destroyed.

The defendant raises four issues on appeal. First, he claims that the trial court erred in admitting into evidence two crushed metal containers, seized by the police from the debris of Tire City during a warrantless search on September 26, 1977, because their admission violated his right to be free from unreasonable searches and seizures, as that right is guaranteed by the fourth and fourteenth amendments to the United States constitution and article first, § 7, of the constitution of Connecticut. Second, he claims the trial court erred in admitting the same containers into evidence as exhibits, because the state was unable to identify them as the gasoline cans used in the commission of the crime. Third, he claims the trial court erred in denying his motion to dismiss, because the state's failure to disclose the names of witnesses who had made allegedly exculpatory statements to the police had deprived him of due process and a fair trial. Fourth, the defendant claims the trial court erred in permitting testimony as to his use of cocaine, because the probative relevance of such evidence of a prior bad act was outweighed by its prejudicial impact. We will consider each of these claims in turn.

I

The facts concerning the contested search and seizure are essentially undisputed. Officials of the Bridgeport fire and police departments suspected arson as soon as they arrived at the scene on Friday, September 23, 1977, within minutes after the explosion occurred. The magnitude and intensity of the flames and the simultaneity of the fires in separate buildings were consistent with the use of

an accelerant such as gasoline in starting the fires. Moreover, when the unconscious John Velasquez was dragged from one of the fiery buildings, the police observed that he smelled strongly of gasoline. A patrolman was immediately stationed at the scene to prevent looting and the premises remained guarded twenty-four hours a day until September 28, 1977.

Later on that Friday morning, the Bridgeport building inspector determined that what remained of the structure was in danger of imminent collapse and ordered it demolished. At the request of the defendant's insurer, however, demolition was postponed for a half hour to permit measurements to be made and photographs to be taken of the premises. Thereafter the buildings were flattened. Work was then discontinued during the weekend of September 24 and 25.

On Monday morning, September 26, 1977, the demolition contractor, using trucks, payloaders, and bulldozers, continued dismantling what remained of the buildings and began carting away the debris. On that same Monday, at about noon, John Velasquez made a statement to the police confessing his part in the arson and implicating the defendant. In his statement, he referred to the gasoline cans used in starting the fire. Without any effort to obtain a warrant, an officer was immediately dispatched to the Tire City premises to search for the cans. Within an hour, two crushed and corroded metal containers were discovered. The warrantless search continued the following day, and resulted in the seizure of a brick and soil samples.

During the trial, the defendant made a motion to suppress the seized articles; i.e., the containers, the

brick and the soil samples. The state, in opposing the motion, argued that the defendant no longer possessed a reasonable expectation of privacy in the premises at the time of the search, and that, with respect to the metal containers, the exigent circumstances created by the ongoing removal of debris made it necessary to forgo the obtaining of a warrant. Without issuing a memorandum of decision, the trial court granted the motion to suppress the brick and soil particles, citing *Michigan* v. *Tyler,* 436 U.S. 499, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978), in which the United States Supreme Court held that once a reasonable time after a fire has elapsed, additional entries to investigate the cause of the fire must be made pursuant to a warrant. Id., 511. The motion to suppress the metal containers was denied.

On appeal, the state concedes that the search conducted for the gasoline cans may be sustained, if at all, only by the exigent circumstances surrounding it. The defendant claims (a) that no exigent circumstances existed, (b) that in light of the state's continuing failure to obtain a warrant as the search persisted through the following day, the claim of exigency is pretextual, and (c) that whatever exigency existed on September 26 resulted from the state's failure to act expeditiously in investigating the arson once it had probable cause to obtain a search warrant, which the defendant claims was already established on Friday, September 23. Because we agree with the defendant that the state did not establish the existence of exigent circumstances, we do not consider his second and third claims of error on this aspect of his appeal.

According to well-settled principles, the fourth amendment, and its state counterpart, article first, § 7, forbid as unreasonable most searches that are conducted outside of the judicial process. *Mincey* v. *Arizona,* 437 U.S. 385, 390, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978); *Coolidge* v. *New Hampshire,* 403 U.S. 443, 481, 91 S. Ct. 2022, 29 L. Ed. 2d 564, reh. denied, 404 U.S. 874, 92 S. Ct. 26, 30 L. Ed. 2d 120 (1971); *Katz* v. *United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); *State* v. *Zindros,* 189 Conn. 228, 236–37, 456 A.2d 288 (1983); *State* v. *Federici,* 179 Conn. 46, 53, 425 A.2d 916 (1979). Because the requirement of obtaining a warrant is the rule, and exceptions to that requirement are few and jealously guarded, anyone claiming an exemption from that requirement bears the burden of showing the need for it. *Arkansas* v. *Sanders,* 442 U.S. 753, 759–60, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979); *United States* v. *Bruton,* 647 F.2d 818, 822 (8th Cir.), cert. denied, 454 U.S. 868, 102 S. Ct. 333, 70 L. Ed. 2d 170 (1981); *State* v. *Zindros,* supra, 237; *State* v. *Krause,* 163 Conn. 76, 80, 301 A.2d 234 (1972); *State* v. *Keeby,* 159 Conn. 201, 206, 268 A.2d 652 (1970), cert. denied, 400 U.S. 1010, 91 S. Ct. 569, 27 L. Ed. 2d 623 (1971). Nonetheless, there are circumstances where the societal costs of obtaining a warrant outweigh the reasons for prior recourse to a neutral magistrate. When confronted with emergency situations in which the delay necessary to obtain a warrant creates a risk of loss or destruction of evidence, courts have recognized that such exigency makes a warrantless search not unreasonable. *Schmerber* v. *California,* 384 U.S. 757, 770–71, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966); *United States* v. *McEachin,* 670 F.2d 1139, 1144 (D.C. Cir. 1981); *State* v.

*Januszewski,* 182 Conn. 142, 152, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981); *State* v. *Krause,* supra, 81. See 2 LaFave, Search and Seizure § 6.5 (1972).

We recognize that exigency is not the only basis upon which warrantless searches may be sustained, but we believe it to be the only issue properly before us on the present appeal. As this case comes to us, there is no occasion to find either an abandonment of the defendant's reasonable expectation of privacy or a valid consent to the search that took place.

When the trial court ordered suppression of the brick and soil particles seized by the police on September 27, it necessarily determined, as a matter of fact, that the defendant retained a reasonable expectation of privacy in the searched premises at that time. See *State* v. *Zindros,* supra, 236, 239–40. The state has taken no issue on this appeal with that order. Consequently the state has not argued that the defendant's privacy interest was different on September 26, with regard to the containers whose seizure was upheld, than on the following day, with regard to the seizure of the brick and soil particles which were suppressed. There can be no doubt that the trial court ruled on the privacy issue on all the items seized in the defendant's favor.

Because the defendant had obtained a favorable ruling on the privacy issue, and because the state in its brief conceded that the search could be sustained only by a finding of exigent circumstances, we would be justified in overturning the trial court's finding of fact on privacy only if we found it to be plain error. The record does not support such a conclusion. There was evidence at the trial that the

defendant owned not only the buildings and the business of Tire City but the underlying real property as well. A representation, at oral argument, that, at the time of the search, the defendant had recommenced doing business on the premises was not challenged by the state. This evidence, while not voluminous, suffices to sustain the trial court's ruling in the present procedural circumstances.

There is even less in the record concerning the defendant's consensual abandonment of his right of privacy. There was some evidence that the defendant's insurer, by virtue of the insurance contract, had a right to inspect the premises in the event of a fire. The state has not argued that consent to entry, given to one person or class of persons, automatically confers license upon the police to enter the premises in search of evidence of criminal conduct. The authorities are to the contrary. See *Lo-Ji Sales, Inc.* v. *New York,* 442 U.S. 319, 329, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979); *Lewis* v. *United States,* 385 U.S. 206, 211, 87 S. Ct. 424, 17 L. Ed. 2d 312 (1966), reh. denied, 386 U.S. 939, 87 S. Ct. 951, 17 L. Ed. 2d 811 (1967).

It is true that at the time the search occurred, the defendant's buildings had been substantially demolished and their component parts and contents were being removed from the premises. In determining whether the defendant retained a reasonable expectation of privacy in the underlying premises, however, the issue is not whether "a given 'area,' viewed in the abstract, is 'constitutionally protected . . . .' " *Katz* v. *United States,* supra, 351. But cf. *State* v. *Stavricos,* 506 S.W.2d 51 (Mo. Ct. App. 1974); *State* v. *Aragon,* 89 N.M. 91, 547 P.2d 574 (1976). Rather, the issue is whether the disputed search violated the expectation of privacy upon which the defendant

justifiably relied. See *Katz* v. *United States,* supra; 1 LaFave, supra, § 2.2, p. 273 (1972). What an individual seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. *Katz* v. *United States,* supra, 351–52.

In the present case, the condition of the premises at the time of the search resulted from both the fire and the dismantling operation ordered by the Bridgeport building inspector. The extent of the destruction produced by the fire alone is not the subject of our inquiry. It suffices to note that a fire does not necessarily diminish the owner's reasonable expectation of privacy in the burned building. See *Michigan* v. *Tyler,* supra, 506; *State* v. *Zindros,* supra, 242. The dismantling operation was undertaken based on a hazard to public safety perceived upon inspection by the municipal administrator competent to make such a determination. The United States Supreme Court has recognized that inspections undertaken to abate dangerous conditions, "because [they] . . . are neither personal in nature *nor aimed at the discovery of evidence of crime,* . . . involve a relatively limited invasion of the urban citizen's privacy." (Emphasis added.) *Camara* v. *Municipal Court,* 387 U.S. 523, 537, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967); see also Reich, "Midnight Welfare Searches and the Social Security Act," 72 Yale L.J. 1347 (1963). It follows that the remedial operations which are the natural result of such an inspection do not necessarily attenuate further the owner's expectation of privacy.[2] In finding the defendant retained such

---

[2] The state, in its brief, concedes that the search by the police was not "motivated by a need to correct a potentially dangerous condition on the premises or to locate any objects which could possibly cause a future fire. The safety of surrounding premises or people was not the moving factor."

an expectation, the trial court might well have concluded that in the confused aftermath of the blaze the defendant did not see the full implication, as far as his privacy interests were concerned, of the dismantling operation. His presence on the premises, at the time of the search, is as consistent with exercise of his right to privacy as it is with his abandonment of any such expectation. We cannot say, under the circumstances, that the court's finding was plainly in error.

The question before us is, therefore, whether the trial court was correct in its determination that exigent circumstances excused the failure of the police to obtain a warrant before they searched the remains of the Tire City premises on September 26. We recognize that the existence of exigent circumstances is a question of fact; *United States* v. *Brock,* 667 F.2d 1311, 1318 (9th Cir. 1982); *United States* v. *Williams,* 630 F.2d 1322, 1327 (9th Cir.), cert. denied sub nom. *Murchison* v. *United States,* 449 U.S. 865, 101 S. Ct. 197, 66 L. Ed. 2d 83 (1980); and that we are bound to uphold the trial court's denial of the defendant's motion to suppress if there is a reasonable view of the evidence that will sustain it. *United States* v. *Williams,* supra, 1327; see *State* v. *Zindros,* supra, 238. We therefore accept as proven the state's contention that, at the time when the police learned of the existence of the gasoline cans, their imminent removal from the searched premises was a distinct possibility. On the present record, however, that possibility does not suffice to establish that there was then an emergency "which would render a search ineffective if delayed by the time necessary to get a warrant." *State* v. *Krause,* supra, 81.

The present record rebuts exigency because it contains nothing to show that it was impossible or unreasonable for the police to obtain a temporary halt to the removal of debris while they went to get a warrant. Apparently the police made no such effort. The previous Friday, according to the evidence, razing of the burnt-out structure had been halted at the request of insurance investigators, even after the building inspector had determined the structure to be a hazard to the public. There was no evidence that, on the Monday of the search, a delay in completion of the removal work would have endangered the public safety, would have created additional danger, or would otherwise have been unreasonable. See *United States* v. *Gargotto,* 510 F.2d 409, 411 (6th Cir. 1974), cert. denied, 421 U.S. 987, 95 S. Ct. 1990, 44 L. Ed. 2d 477 (1975). Since a police officer was already on the premises, he could have ensured that no evidence would be removed during the short time that obtaining a warrant would have taken. *United States* v. *McEachin,* 670 F.2d 1139, 1146 (D.C. Cir. 1981). We note, as have other courts, that it is more difficult to demonstrate exigency when the claimed risk relates to the fear of removal rather than of destruction of evidence that the police want to seize without a warrant. *United States* v. *Rubin,* 474 F.2d 262, 268 (3d Cir.), cert. denied sub nom. *Agran* v. *United States,* 414 U.S. 833, 94 S. Ct. 173, 38 L. Ed. 2d 68 (1973); *People* v. *Smith,* 5 Ill. App. 3d 341, 350, 275 N.E.2d 480 (1971). See 1 LaFave, supra, § 3.2, p. 449. When there are reasonable alternatives to a warrantless search, the state has not satisfied its burden of proving exigent circumstances. *United States* v. *Kunkler,* 679 F.2d 187, 191–92 n.3 (9th Cir. 1982); *United States* v. *Adams,* 621 F.2d 41, 44–45 (1st Cir. 1980); *United States* v.

*Dias-Segovia,* 457 F. Sup. 260, 273 (D. Md. 1978). The exception for exigency, like other exceptions to the warrant requirement, is limited in reach "to that which is necessary to accommodate the identified needs of society." *Arkansas* v. *Sanders,* 442 U.S. 753, 760, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979); *Mincey* v. *Arizona,* 437 U.S. 385, 393, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978); *Coolidge* v. *New Hampshire,* 403 U.S. 443, 455, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971).

The state contends that even if the trial court's failure to suppress the metal containers was erroneous, the error was harmless. We cannot agree. As the state acknowledges, where the error of the trial court intrudes upon the constitutional rights of the accused, it is the state's burden to show that the error was harmless beyond a reasonable doubt. *State* v. *Truppi,* 182 Conn. 449, 465, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981); *State* v. *Sorbo,* 174 Conn. 253, 257, 386 A.2d 221 (1978).

In this case, the metal containers served to corroborate the only testimony, that of the Velasquez brothers, which unequivocally implicated the defendant in the conspiracy with which he was charged. It is true that defense counsel vigorously cross-examined these witnesses concerning alleged inconsistencies in their testimony and as to their respective criminal activities and records. Nonetheless, we recognize, as do the commentators, that the containers themselves, present with the jury in the jury room, may well have played a major role in the jury's deliberations. "Real proof often has enormous apparent probative force because the lay trier may lose sight of the fact that its connection to a party may depend upon the credibility

of an authenticating witness." 5 Weinstein's Evidence § 901(a)[01] (1982). "[T]here is a general mental tendency, when a corporal object is produced as proving something, to *assume, on sight of the object, all else that is implied in the case* about it." (Emphasis in original.) 7 Wigmore, Evidence (Chadbourn Rev. 1978) § 2129, p. 704; see McCormick, Evidence (2d Ed. 1972) § 212, pp. 524–25. We conclude that we cannot find the error harmless in the present circumstances. See *State* v. *Onofrio,* 179 Conn. 23, 32, 425 A.2d 560 (1979); *State* v. *Acklin,* 171 Conn. 105, 116, 368 A.2d 212 (1976).

## II

Even if the search had not violated the defendant's constitutional rights, the defendant claims that admitting the two metal containers into evidence was error because there was an insufficient evidentiary foundation for their identification. Since we have determined the inadmissibility of these containers on constitutional grounds, we need not consider this claim of error.

## III

The defendant's third claim on appeal is that the trial court erred in denying the defendant's motion to dismiss on grounds of the state's failure to disclose, until the trial was under way, three allegedly exculpatory statements made to the police during their pretrial investigation. The statements established the following: that a man resembling John Velasquez was seen in a Howard Johnson's restaurant shortly before the explosion on September 23, 1977; that two males were seen running from the vicinity of Tire City shortly after the explosion; and that a black or Hispanic man

was seen running from the scene after the explosion, and that he got in a car and drove away. The defendant claims that the evidence contained in these statements was exculpatory in that (a) it contradicted testimony of the Velasquez brothers than John Velasquez had visited the Howard Johnson's restaurant at 9:30 p.m. to hear the defendant's proposal and had not subsequently returned there and (b) it tended to contradict the state's theory that the arson was committed by only two individuals.

The statements have now been disclosed to the defendant. Any prejudice to his defense which resulted from their nondisclosure may be avoided upon retrial. It is therefore necessary only to determine whether the trial court erred in denying the defendant's motion to dismiss. We conclude that it did not.

It is undisputed that the state has both a statutory and constitutional obligation to disclose all material evidence it possesses that is favorable to an accused. See *United States* v. *Agurs,* 427 U.S. 97, 107, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976); General Statutes § 54-86c; *State* v. *Packard,* 184 Conn. 258, 277, 439 A.2d 983 (1981). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States* v. *Agurs,* supra, 109–10; *State* v. *Bember,* 183 Conn. 394, 405, 439 A.2d 387 (1981).

We are not persuaded that the undisclosed material created a reasonable doubt that did not other-

wise exist. *State* v. *Bember,* supra, 406–407.[3] Even if we were to assume that the undisclosed information was material, the proper remedy in the circumstances of the present case would have been an order for a continuance once the statements were made available or a declaration of mistrial. See Practice Book § 747.[4] The defendant did not request these remedies. The trial court therefore properly denied the defendant's motion to dismiss.

## IV

The defendant's fourth and final claim is that the trial court erred in admitting and failing to strike testimony of Robert Kettles that the defendant purchased for his own use $50,000 worth of cocaine in the six-month period prior to the fire. The state argues on appeal that the large expenditure is probative of motive, in that it establishes a financial incentive to commit the arson. The defendant claims that absent evidence that he could not otherwise afford the expenditure, the testimony is irrelevant and inflammatory. Because the issue is likely to arise on retrial, we consider it now.

[3] We note that the declarants of two of the undisclosed statements were called as witnesses at trial, where their testimony reiterated the contents of their prior statements. The third declarant, who had witnessed the flight of two males, was unavailable to testify at trial; however, a defense witness testified that he saw four Hispanic youths fleeing the scene shortly after the fire.

[4] Practice Book § 747 (formerly § 2158) provides: "SANCTIONS FOR FAILURE TO COMPLY. If the prosecuting authority fails to comply with Sec. 740, the judicial authority may, on motion of the defendant or on his own motion, grant appropriate relief, which may include one or more of the following: (1) Requiring the prosecuting authority to comply; (2) Granting the defendant additional time or a continuance; (3) Relieving the defendant from making a disclosure required by Sec. 756, prohibiting the prosecuting authority from introducing specified evidence, or dismissing the charges; or (4) Entering such other order as he deems proper."

Our review of the record indicates that on at least three occasions prior to Kettles' testimony, the jury heard testimony that the defendant used drugs, including cocaine. No objection was raised by defense counsel at those times. On one of those occasions, the testimony concerning the defendant's use of drugs was elicited by defense counsel himself. Under the circumstances, the additional prejudice that might have resulted from Kettles' testimony was insignificant. The trial court properly admitted the evidence and denied the motion to strike.

If the defendant, upon retrial, properly preserves an objection to this testimony, it will be the responsibility of the trial court carefully to balance the relevance and the prejudicial impact of evidence of drug use. The trial court will have to consider to what extent an expensive drug habit is probative of motive to commit arson, and to what extent the state has proven that the defendant cannot afford his habit. Especially if the probative value of such testimony is found to be minimal, the trial court will have to weigh carefully its potential for seriously prejudicing the jury against the defendant. *State* v. *Carter,* 189 Conn. 631, 642–44, 458 A.2d 379 (1983); *State* v. *Nardini,* 187 Conn. 513, 521–22, 447 A.2d 396 (1982); *State* v. *Marquez,* 160 Conn. 47, 52, 273 A.2d 689 (1970). Because we cannot predict the course of a new trial, we cannot give further direction on this issue at this time.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.