STATE OF CONNECTICUT *v.* RASHAAN DAVIS
(AC 23697)

Dranginis, Flynn and McDonald, Js.

---

Argued January 22—officially released November 2, 2004

*Jeanne M. Zulick*, special public defender, with whom was *Mark Shapera*, assistant public defender, for the appellant (defendant).

*Harry D. Weller*, supervisory assistant state's attorney, with whom, on the brief, were *Patricia M. Froehlich*, state's attorney, and *Thomas M. DeLillo*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Rashaan Davis, appeals from the judgment of conviction, rendered following his conditional plea of nolo contendere pursuant to General Statutes § 54-94a,[1] of possession of less than

---

[1] General Statutes § 54-94a provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. . . ."

four ounces of marijuana in violation of General Statutes § 21a-279 (c). On appeal, the defendant claims that the court improperly denied his (1) motion to suppress and (2) motion to dismiss in violation of his constitutional right to due process and to confront the witnesses against him. We agree that the court improperly denied his motion to suppress and reverse the judgment of the trial court.[2]

The defendant filed a motion to suppress the evidence found pursuant to a warrantless police search of his person on September 14, 2001. In ruling on the defendant's motion, the court found the following facts. On the date in question, a clerk at a Chucky's convenience store in Putnam telephoned the state police to report what appeared to her to be suspicious activity by a patron of the store. The individual was wearing a long-sleeved, hooded sweatshirt. The clerk was concerned because the day was warm and the individual acted "funny." The clerk felt uncomfortable.

The clerk telephoned the police because Chucky's management had a policy, pursuant to its robbery deterrence program, to report any suspicious activity. She described the individual as being dark skinned, either Hispanic or black, and wearing a long-sleeved, hooded sweatshirt. She also provided his approximate height and weight. The clerk stated that the person had acted suspiciously, talked to no one, looked about the store and left. She also said that no crime had been committed, but that the person's conduct had bothered her.

Later, the police observed the defendant carrying groceries from his vehicle to his dwelling place. The police stopped the defendant, as he fit the description of the individual described by the clerk. During a patdown frisk of the defendant's person, the police found a

---

[2] Because we reverse the defendant's conviction on the basis of the denial of his motion to suppress, we need not reach his second claim.

packet of marijuana. He was arrested and charged accordingly.

In its memorandum of decision, the court noted the law that when police have a reasonable and articulable suspicion, they may conduct an investigatory stop to dispel or to confirm their suspicion. See *Terry* v. *Ohio*, 392 U.S. 1, 30–31, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). During such detention, the police may search for a weapon if they believe the suspect is potentially dangerous.[3] *State* v. *Wilkins*, 240 Conn. 489, 495–96, 692 A.2d 1233 (1997). Furthermore, if during the course of the search, the police legitimately uncover incriminatory evidence that establishes probable cause to arrest the detainee, they may do so. *State* v. *Kyles*, 221 Conn. 643, 660–62, 607 A.2d 355 (1992). The court concluded, on the basis of the totality of the circumstances, that the police had a reasonable suspicion sufficient to identify the defendant and that the stop and inquiry was not an illegal search.[4] It therefore denied the defendant's motion to suppress.

Subsequently, the defendant withdrew his not guilty plea and entered a conditional plea of nolo contendere. The court, *Foley, J.*, imposed a sentence of six months in prison, execution suspended, and one year of probation. On that day, the defendant filed a motion to stay his sentence, which the court granted. The defendant thereafter timely filed this appeal.

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is

[3] Although the court cited this rule of law, it made no findings of fact as to why the police thought the defendant presented a risk of danger.

[4] The factual findings of the court were sparse. In its memorandum of decision, the court did not find specific facts that led the police to have a reasonable and articulable suspicion that criminal activity had occurred or was about to occur, nor did it analyze those facts in accord with the legal principles cited to explain its conclusion. The state did not file a motion for articulation.

well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the *facts set out* in the memorandum of decision . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Blackman*, 246 Conn. 547, 553, 716 A.2d 101 (1998).

On appeal, the defendant contends that the search and seizure violated his constitutional rights under both the fourth amendment to the United States constitution and article first, §§ 7, 8 and 9, of the constitution of Connecticut. Our Supreme Court has determined that our state constitution affords greater protection against illegal searches and seizures than does the federal constitution. *State* v. *Oquendo*, 223 Conn. 635, 649–50, 613 A.2d 1300 (1992). We agree with the defendant that the police seized him without a reasonable and articulable basis to suspect that criminal activity had occurred or was about to occur.

"[A] person [is defined] as seized under our state constitution when by means of physical force or a show of authority, his freedom of movement is restrained. . . . In determining whether a seizure has occurred, so as to invoke the protections of our state constitution . . . a court is to consider whether in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (Internal quotation marks omitted.) *State* v. *Donahue*, 251 Conn. 636, 642–43, 742 A.2d 775 (1999), cert. denied, 531 U.S. 924, 121 S. Ct. 299, 148 L. Ed. 2d 240 (2000).

"Article first, §§ 7 and 9 of our state constitution permit a police officer in appropriate circumstances and in an appropriate manner to detain an individual for

investigative purposes even though there is no probable cause to make an arrest. . . . In determining whether the detention was justified in a given case, a court must consider if [b]ased upon the whole picture the detaining officers [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . . A court reviewing the legality of a stop must therefore examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom. . . . These standards, which mirror those set forth by the United States Supreme Court in *Terry* v. *Ohio*, [supra, 392 U.S. 20–22], with regard to fourth amendment analysis, govern the legality of investigatory detentions under article first, §§ 7 and 9 of our state constitution." (Citations omitted; internal quotation marks omitted.) *State* v. *Donahue*, supra, 251 Conn. 643–44.

Sections seven and nine of the Connecticut constitution afford greater protection to citizens of this state than does the federal constitution in the determination of what constitutes a seizure. Id., 645. "Police have the right to stop for investigation short of arrest where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot. . . . [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Internal quotation marks omitted.) Id.

"When considering the validity of a *Terry* stop, our threshold inquiry is twofold. . . . First, we must determine at what point, if any, did the encounter between [the police officer] and the defendant constitute an investigatory stop or seizure. . . . Next, [i]f we conclude that there was such a seizure, we must then deter-

mine whether [the police officer] possessed a reasonable and articulable suspicion at the time the seizure occurred." (Citations omitted; internal quotation marks omitted.) *State* v. *Santos*, 267 Conn. 495, 503, 838 A.2d 981 (2004).

In this case, the defendant contends that the police conducted an investigatory stop when they saw him carrying groceries from his vehicle to his dwelling place, as the court found. Our constitution and the federal constitution permit a police officer to stop a person to investigate when the police observe unusual conduct that leads them reasonably to conclude in light of their experience that criminal activity may be afoot. Here, the court found that the police stopped the defendant because he fit the description of the individual who had caused the clerk at Chucky's to feel uncomfortable by wearing a long-sleeved, hooded sweatshirt in warm weather, looking around the store, speaking to no one and leaving.

Our case law holds that the defendant's manner of dress is not in and of itself criminal behavior. *State* v. *Oquendo*, supra, 223 Conn. 655. In addition, it is an everyday event for a person to enter a convenience store, look around and leave without speaking to someone. Most importantly, the clerk reported that no crime had taken place. The police officers' questioning of the defendant alone did not constitute a seizure or illegal activity. Conducting a patdown search, however, is another matter. No reasonable person would feel free to leave under those circumstances. The court, however, found no facts to substantiate its finding that the police had a reasonable and articulable suspicion that the defendant was engaged in or about to engage in criminal activity. On the basis of the totality of the circumstances, we cannot say that the "detaining officers [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity." (Inter-

nal quotation marks omitted.) *State* v. *Scully*, 195 Conn. 668, 674, 490 A.2d 984 (1985).

Furthermore, during a *Terry* detention, the police are permitted to search the detainee if they believe he is dangerous. The defendant here, according to the facts found by the court, did no more than fit the description of the person who the clerk believed had behaved suspiciously. The clerk reported that no crime had been committed. At the time the police stopped him, the defendant was walking toward his home. The court's memorandum of decision is devoid of any facts as to why the police thought that the defendant posed a threat to their safety, thereby warranting a patdown search. A patdown search is intended to secure the safety of the investigating officer by permitting him to search for weapons. The officer cannot "conduct a general exploratory search for whatever evidence of criminal activity he might find." *Terry* v. *Ohio*, supra, 392 U.S. 30.

The court's memorandum of decision contains no facts describing the manner in which the police searched the defendant or how the officer determined that the defendant was in possession of marijuana. Our state constitution permits a police officer to seize contraband during a patdown search for weapons if the illegal nature of the substance is readily apparent. *State* v. *Trine*, 236 Conn. 216, 228–34, 673 A.2d 1098 (1996). "The incriminating nature of a nonthreatening object felt during a patdown search must be immediately apparent; the police officer who conducts the search cannot manipulate the object to discern its identity." Id., 233.

For those reasons, we conclude that the police seizure of the defendant was constitutionally infirm and that the court, therefore, improperly denied his motion to suppress the marijuana, as it was the fruit of the poisonous tree. *Wong Sun* v. *United States*, 371 U.S.

471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Without evidence of the marijuana, the state could not establish that the defendant had violated § 21a-279 (c).

The judgment is reversed and the case is remanded with direction to vacate the judgment and to dismiss the charge against the defendant.

In this opinion FLYNN, J., concurred.

MCDONALD, J., dissenting in part, concurring in part. I agree with the result.

In this case, the state relies on a frisk or patdown for weapons under *Terry* v. *Ohio*, 392 U.S. 1, 24, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and *State* v. *Kyles*, 221 Conn. 643, 661, 607 A.2d 355 (1992). I agree that the state has failed to meet its burden of establishing facts supporting a legal search and seizure without a warrant. See *United States* v. *Jeffers*, 342 U.S. 48, 51, 72 S. Ct. 93, 96 L. Ed. 59 (1951); *State* v. *Keeby*, 159 Conn. 201, 268 A.2d 652 (1970), cert. denied, 400 U.S. 1010, 91 S. Ct. 569, 27 L. Ed. 2d 623 (1971). I would conclude that the state did not present sufficient evidence of the nature and extent of the "patdown" of the defendant. Our Supreme Court has held that such a patdown search does not exceed constitutionally permissible bounds if the officer limits the search to an open, flat-handed patdown of the exterior of a suspect's clothing for weapons and does not manipulate the object that he discovers or otherwise extend the scope of the search. *State* v. *Trine*, 236 Conn. 216, 227, 673 A.2d 1098 (1996); see also *Minnesota* v. *Dickerson*, 508 U.S. 366, 373, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993). State police Trooper Stevens, who patted down the defendant, did not testify at the hearing and, thus, did not describe his patdown of the defendant. Another officer, state police Detective Contre, who was present at the time, testified that Stevens had the defendant

put his hands on a fence and then patted down the defendant. Stevens felt a hard object that he "thought" was a weapon and had the defendant empty his pockets. Consequently, the trial court could not find that the patdown frisk was limited and did not exceed constitutionally permissible bounds. See *State* v. *Mann*, 271 Conn. 300, 319–20, 857 A.2d 329 (2004).

The majority also concludes that the officers did not have a reasonable and articulable suspicion to justify stopping the defendant and reasonable grounds to believe that the defendant might be armed to justify a patdown for weapons. Although the state presented scant evidence on the issues and, as a result, the court's factual findings were sparse, I would hold that there was sufficient evidence for the court to conclude that a stop and frisk was permissible.[1] There was evidence that in hot weather, the defendant was wearing a hooded sweatshirt, which covered his head. The defendant aroused the convenience store clerk's suspicions by entering and leaving the store after looking around. When, as part of a robbery deterrence program, the store notified the police, it would have been "poor police work indeed"; *Terry* v. *Ohio*, supra, 392 U.S. 23; if the police ignored that call. Wearing a hooded sweatshirt in a convenience store, under such circumstances, may constitute reasonable grounds for suspicion that the store is being, in police parlance, "cased,"[2] and that the suspect may be armed. All too common are convenience store robberies in which a hood serves as a disguise.

---

[1] Neither party requested an articulation of the court's memorandum of decision.

[2] Merriam-Webster's Collegiate Dictionary (10th Ed.) defines "casing" as: "to inspect or study esp. with intent to rob."