**Willie JONES, Plaintiff-Appellant,**

**v.**

**Joseph GERWENS, as Chief of Police of the City of Fort Lauderdale Police Department, and City of Fort Lauderdale Police Department, Defendants-Appellees.**

**No. 88–5220.**

United States Court of Appeals, Eleventh Circuit.

June 13, 1989.

Patricia Graham Williams, Miami, Fla., for plaintiff-appellant.

Gordon D. Rogers, Muller, Mintz, Kornreich, Caldwell, Casey, Crosland & Bramnick, P.A., Miami, Fla., for defendants-appellees.

Before ANDERSON and EDMONDSON, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

ANDERSON, Circuit Judge:

Plaintiff Willie A. Jones appeals from an order of the district court granting defendants City of Fort Lauderdale, Florida, and Joseph Gerwens, Chief of Police, summary judgment on his claim of disparate disciplinary treatment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (1981). Because Jones failed to make a showing of a genuine issue of material fact sufficient to establish the existence of disparate treatment in the application of disciplinary measures, the granting of summary judg-ment was correct. Accordingly, the judgment of the district court is affirmed.

## FACTS

Willie A. Jones, who is black, began working as a police officer with the City of Fort Lauderdale Police Department on April 12, 1980. In September 1983, Jones was assigned to the Mounted Patrol Unit, which was then supervised by Sergeant Robert Dietrich. Effective November 3, 1985, Sergeant Dietrich was transferred to Uniform Patrol duties. Dietrich was replaced by Sergeant Ryan Runnerstrom, who worked with Dietrich to become oriented to Mounted Unit operations until October 21, 1985, when Dietrich went on vacation.[1]

During the period he supervised the Mounted Unit, Sergeant Dietrich, in knowing violation of City rules prohibiting employees from using Department vehicles for personal business, occasionally authorized employees under his supervision to use for personal matters a marked police pickup truck assigned to the Mounted Unit. Around October 30, Sergeant Runnerstrom told Jones that whatever had happened previously in the Mounted Unit "was history" and that the Unit would operate "by the book" under Runnerstrom's supervision. R1: Tab 31, ¶ 8, at 3. Shortly before November 2, Jones attended a meeting of Mounted Unit members at which Dietrich declared that Runnerstrom would be taking over supervision of the Unit and warned that Runnerstrom was a strict supervisor.

Jones was off duty on Saturday, November 2. At approximately 5:30 p.m. or 5:45 p.m. he drove to the Police Barn in his personal vehicle to pick up the Mounted Unit pickup truck to use for the moving of personal furniture. He was not in uniform at the time. As Jones drove the pickup truck away from the Barn, he saw Sergeant Runnerstrom driving to the Barn. Runnerstrom contacted Jones by police radio, and Jones told Runnerstrom that he

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. The precise date upon which the office of supervisor of the Mounted Unit changed hands is a matter of dispute between the parties.

would contact him by telephone. Jones contacted Runnerstrom by telephone at approximately 6:00 p.m., and said that he had "mentioned" his use of the truck to Sergeant Dietrich.[2] Jones used the truck to move his personal furniture, making at least two trips from his former residence to his new residence. When Jones returned to the Barn in the truck at approximately 8:00 p.m., riding with him as a passenger was a non-City employee.

That evening Sergeant Runnerstrom wrote a memorandum to Captain Joseph Donisi which detailed Jones' actions in using the truck and charged him with violations of the following City rules: Rule 22.-12 (Misusing Departmental Property or Equipment); Rule 17.4 (Untruthfulness); Rule 22.4 (Failure to Obey a Lawful Order); and P.M.S. 8.1.1(6) (Unauthorized Person in a City Vehicle). Runnerstrom recommended that Jones be suspended.

At a November 15 disciplinary hearing before Police Chief Joseph Gerwens, Jones admitted that he had committed all of the rule violations with which he was charged.[3] Gerwens recommended, and Jones received, a one-day suspension without pay. In addition, Jones was transferred to Uniform Patrol duties on or about December 8, 1985. Following Jones' transfer out of the Mounted Unit, a white officer was assigned to the Unit. Jones filed a complaint with the Equal Employment Opportunity Commission, which subsequently issued a right-to-sue letter.

Jones brought this employment discrimination action under Title VII, contending that the disciplinary measures in question were racially motivated in that white police officers who had committed allegedly similar offenses received lesser discipline or no discipline at all. The district court granted defendants' motion for summary judgment, holding that Jones had failed to establish a prima facie case of racial discrimination. The court found that Jones could not show that the misconduct for which he was disciplined was nearly identical to the conduct of a white employee who was not disciplined. *Jones v. Gerwens*, 677 F.Supp. 1151, 1152 (S.D.Fla.1988). With respect to the unauthorized use of a city vehicle, the district court held that white members of the Mounted Unit who had used the city truck for personal services during Sergeant Dietrich's tenure as supervisor were not similarly situated to Jones for Title VII purposes, because "Sergeant Ryan Runnerstrom became Supervisor of the Unit on October 21, 1985 and shortly thereafter informed plaintiff that he would run the Unit 'by the book' and that things would not be the same as they had been under Sergeant Dietrich." *Id.* Furthermore, the court found that Jones had "shown no instance where Sergeant Runnerstrom permitted employees to use the city vehicle for personal reasons." *Id.*

The court found, with respect to the charges of untruthfulness and failure to obey an order, that Jones' disparate treatment claim also failed, because "[t]he evidence clearly shows that white officers

---

**2.** Defendants contend that Jones told Runnerstrom that Dietrich had given Jones permission to use the truck. Defendants further assert that Runnerstrom "gave Plaintiff Willie Jones a direct order to bring the Mounted Unit pickup truck 'right back' to the Police Barn." R1: Tab 31, ¶ 12, at 5. Jones says he was never given a direct order to return the vehicle. Rather, according to Jones, when told that he was using the truck to move furniture, Runnerstrom said, "well, I don't know about that. And I said, well, okay. What do you want me to do? Before he answered, I said, I'll be back. End of conversation." R1: Tab 35, at 8; Jones' Deposition, at 45.

**3.** This admission, set forth in Defendants' Statement of Undisputed Facts, filed simultaneously with Defendants' Motion for Summary Judg-

ment, has not been disputed by Jones. Facts set forth in the Defendants' Statement of Undisputed Facts which are not controverted, are deemed admitted pursuant to Southern District of Florida Local Rule 10(J)(2):

> Motions for summary judgment shall be accompanied by ... a concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include ... a concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the opposing party's statement.

charged with those offenses received similar discipline." 677 F.Supp. at 1153. Accordingly, the court held that Jones had failed to show the existence of a genuine issue of material fact, and granted summary judgment for defendants.[4] Jones timely filed notice of appeal from the district court judgment.

On appeal Jones contends that the district court erred in granting summary judgment, because there are material facts in dispute which undermine the district court's conclusion that he could not meet his burden of proof at trial, specifically: (1) who was sergeant of the Mounted Unit on November 2; (2) whether Jones had discussed his use of the truck with Dietrich; (3) whether Jones was in fact untruthful and did in fact disobey an order; and (4) whether white employees similarly situated to Jones went unpunished after permitting unauthorized civilians to ride in city vehicles. Because we find that none of these alleged factual disputes are material, we affirm the judgment of the district court.[5]

## DISCUSSION

 Summary judgment is proper "only if the evidence produced by the nonmoving party, when viewed in a light most favorable to that party, fails to establish a genuine issue of material fact." *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 932 (11th Cir.1987). There is no genuine issue of material fact if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on

which the party will bear the burden of proof at trial. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

In order to prove disparate treatment in violation of Title VII,[6] the plaintiff must prove by a preponderance of the evidence a prima facie case of employment discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *Chaney v. Southern Railway Co.*, 847 F.2d 718, 722 (11th Cir.1988). A prima facie case raises the inference that discriminatory intent motivated the challenged action against the employee. The employer may rebut the presumption of discrimination by "clearly articulating in a reasonably specific manner a legitimate non-discriminatory reason for the discharge." *Conner v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1499 (11th Cir.1985). "The defendant need not persuade the court that it was actually motivated by the proferred reasons.... It is sufficient if the defendant raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). *See Chaney*, 847 F.2d at 722; *Griffin v. Carlin*, 755 F.2d 1516, 1526 (11th Cir.1985). If he is to prevail, the plaintiff then must establish that the employer's articulated reason was a pretext for discrimination. *See Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

---

**4.** The district court did not specifically address Jones' contention, with respect to the alleged violation of the rule prohibiting unauthorized civilians from riding in city vehicles, that white employees had allowed unauthorized civilians to ride in the Unit truck and had not been disciplined. However, as Jones did not adduce any evidence that violations of this rule occurred while Sergeant Runnerstrom was supervisor, the court's ruling with respect to the unauthorized use of a city vehicle—i.e. that Jones was not similarly situated to white employees working under Sergeant Dietrich—may be understood to apply to this charge as well.

**5.** Jones argues as well that he was acting supervisor of the Unit on the day he allegedly violated departmental regulations, and thus that Runner-

strom was without authority to recommend discipline. The district court found that "no proof" had been put forth in support of this allegation. 677 F.Supp. at 1153. After review of the record, we agree.

**6.** Title VII provides, in relevant part:
> (a) It shall be an unlawful employment practice for an employer—
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin....

42 U.S.C. § 2000e–2 (1981).

804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973); *Chaney,* 847 F.2d at 722; *Conner,* 761 F.2d at 1499. Throughout the trial the plaintiff retains the ultimate burden of proving by a preponderance of the evidence the existence of purposeful discrimination. *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). *See Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1184 (11th Cir. 1984) ("The 'ultimate question' in a disparate treatment case is not whether the plaintiff established a prima facie case or demonstrated pretext, but 'whether the defendant intentionally discriminated against the plaintiff' "), quoting *Aikens,* 460 U.S. at 714–15, 103 S.Ct. at 1481–82.

■ The Supreme Court in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), set forth one method of making out a prima facie Title VII case.[7] However, the Court has made clear that its formulation was not meant to be exclusive, and that a prima facie case of disparate treatment may be established in a number of ways. *See United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) ("The prima facie case method ... was 'never intended to be rigid, mechanistic, or

ritualistic' "), quoting *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13 ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations"); *Nix,* 738 F.2d at 1185 ("A prima facie case of discriminatory discharge may be established in different ways").[8]

■ Although the *McDonnell Douglas* prima facie model was initially developed in the context of a discriminatory hiring claim, the purpose underlying that method of analysis—to focus the inquiry by eliminating "the most common nondiscriminatory reasons" for the employer's action, *see Burdine,* 450 U.S. at 253–54, 101 S.Ct. at 1093–94; *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1184 (11th Cir.1984)—retains equal validity where discriminatory discipline is alleged. We agree with the Fourth Circuit that "[t]he most important variables in the disciplinary context, and the most likely sources of different but nondiscriminatory treatment, are the nature of the offenses com-

7. "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S. at 802, 93 S.Ct. at 1824.

8. It is clear that, where a Title VII plaintiff presents direct evidence of discriminatory motive, the tripartite allocation of evidentiary production is altered. Once the plaintiff in a Title VII case presents direct evidence that the employer acted with discriminatory motive, the employer can rebut the presumption of discrimination only by proving by a preponderance of the evidence that the same decision would have been reached in the absence of the discriminato-

ry motive. *See Price Waterhouse v. Hopkins,* —— U.S. ——, 109 S.Ct. 1775, 1804, 104 L.Ed.2d 268 (1989) (opinion of O'Connor, J., concurring in the judgment) ("in order to justify shifting the burden on the issue of causation to the defendant, a disparate treatment plaintiff must show by direct evidence that an illegitimate criterion was a substantial factor in the decision.... Where a disparate treatment plaintiff has made such a showing, the burden then rests with the employer to convince the trier of fact that it is more likely than not that the decision would have been the same absent consideration of the illegitimate factor"); *Thompkins v. Morris Brown College,* 752 F.2d 558, 563 (11th Cir. 1985). *Cf. Price Waterhouse,* —— U.S. at ——, 109 S.Ct. at 1795 (plurality opinion) ("when a plaintiff in a Title VII case proves that her gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account").

mitted and the nature of the punishments imposed." *Moore v. City of Charlotte,* 754 F.2d 1100, 1105 (4th Cir.), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985). Accordingly, we hold that, in cases involving alleged racial bias in the application of discipline for violation of work rules, the plaintiff, in addition to being a member of a protected class, must show either (a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct. *See Moore v. City of Charlotte,* 754 F.2d at 1105–06 (A plaintiff alleging disparate disciplinary treatment makes out a prima facie case of discrimination "upon a showing (1) that plaintiff engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin, and (2) that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person").[9]

![] Jones seeks to prove intentional discrimination by both of the above methods. As to the first, he contends that he did not commit two of the violations with which he is charged, untruthfulness and disobeying an order.[10] We need not determine the validity of this claim, however, because the City has articulated a legit-

imate, non-discriminatory reason for disciplining Jones—at the November 15 disciplinary hearing Jones admitted that he had committed all of the rule violations. For purposes of Title VII analysis, it is thus of no consequence that Jones now disputes the charges. The law is clear that, even if a Title VII claimant did not in fact commit the violation with which he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation. *See Chaney,* 847 F.2d 718, 723–24 (11th Cir.1988) (focusing disparate treatment inquiry on whether employer had "reason to believe" employee was trying to cover up on-duty marijuana use); *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1186 (11th Cir.1984) (" '[I]f an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown' "), quoting *Chescheir v. Liberty Mutual Insurance Co.,* 713 F.2d 1142, 1148 (5th Cir.1983); *Turner v. Texas Instruments, Inc.,* 555 F.2d 1251, 1256 (5th Cir.1977) ("Even if [employer] wrongly believed that [Title VII claimant] violated this policy, if [employer] acted on this belief it was not guilty of racial discrimination").[11] Admission of misconduct provides sufficient foundation for an employer's good faith belief that an employee has engaged in misconduct.

Jones also contends that numerous white officers made use of the Unit truck for

9. *See also Wilmington v. J.I. Case Co.,* 793 F.2d 909, 915 (8th Cir.1986) ("To establish a prima facie case, [plaintiff] had to show that he is a member of a protected class, that he was disciplined, and that the discipline imposed was harsher than that imposed on comparably situated whites"). *Cf. Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir. 1984) ("a plaintiff fired for misconduct makes out a prima facie case of discriminatory discharge if he shows that he was qualified for the job from which he was fired, and 'that the misconduct for which [he] was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained"), quoting *Davin v. Delta Air Lines, Inc.,* 678 F.2d 567, 570 (5th Cir. Unit B 1981); *Green v. Armstrong Rubber Co.,* 612 F.2d 967, 968 (5th Cir.), *cert. denied,* 449 U.S. 879,

101 S.Ct. 227, 66 L.Ed.2d 102 (1980) ("With respect to discharge for violation of work rules, the plaintiff must first demonstrate by a preponderance of the evidence either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly").

10. Jones concedes both that he made personal use of the Unit truck and that he allowed an unauthorized person to ride with him in the truck.

11. *Cf. Jones v. Los Angeles Community College District,* 702 F.2d 203, 205 (9th Cir.1983) (Employer's "belief in the truth of the charges" against employee "was a 'legally sufficient' explanation for [employee's] termination").

personal business, or allowed unauthorized persons to ride with them, and received no punishment or substantially less than his one-day suspension without pay and subsequent transfer to patrol duties. In making this claim, the burden is on Jones "to show a similarity between [his] conduct and that of white employees who were treated differently and not on [the defendant] to disprove their similarity." *Tate v. Weyerhauser,* 723 F.2d 598, 603 (8th Cir.1983), *cert. denied,* 469 U.S. 847, 105 S.Ct. 160, 83 L.Ed.2d 97 (1984). *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed. 2d 207 (1981) ("it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally"); *Montgomery v. Yellow Freight System, Inc.,* 671 F.2d 412, 413 (10th Cir.1982) (same).[12] Jones has failed to satisfy this burden.

■ Jones' allegation that numerous officers made unauthorized use of the Unit truck while Sergeant Dietrich was supervising officer, and his contention that Dietrich used the truck to go fishing and brought his civilian brother along, are inapposite, absent any evidence that Chief Gerwens or Sergeant Runnerstrom knew of such transgressions. Courts have held that disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis. *See Cooper v. City of North Olmsted,* 795 F.2d 1265, 1271 (6th Cir.1986) ("Although a change in managers is not a defense to claims of race or sex discrimination, it can suggest a basis other than race or sex for the difference in treatment received by two employees"); *Tate v. Weyerhauser,* 723 F.2d at 605 (Where claimants charged with falsifying worksheets attempted to show pretext in reasons given for their respective discharges by comparing the treatment of several white employees who allegedly falsified documents, court found the misconduct and the respective disciplinary measures taken "distinguishable," because none of the supervisory personnel involved in the discipline of claimants participated in decisions regarding white employees); *id.* at 605–06 ("Although a change in managers is not a defense to claims of racial discrimination," evidence that one manager is more lenient than another may explain differential application of sanctions to whites under one manager and blacks under another); *Lynch v. Dean,* 39 FEP Cases 338, 345 (M.D.Tenn.1985), *rev'd on other grounds,* 817 F.2d 380 (6th Cir.1987) ("Proof that workers under [one foreman's] supervision were disciplined more severely than workers under the supervision of other foremen does not aid plaintiff in insisting that she was the victim of selective enforcement of the rules").

■ Inasmuch as Sergeant Runnerstrom initially recommended that Jones be disciplined, and the Chief of Police ultimately acted on that recommendation, it is the motives of those individuals—not those of Sergeant Dietrich—which are at issue.[13]

---

**12.** The Supreme Court has noted, with respect to a claim of discriminatory discharge: "Of course, precise equivalence in culpability between employees is not the ultimate question: as we indicated in *McDonnell Douglas,* an allegation that other 'employees involved in acts against [the employer] of *comparable seriousness* ... were nevertheless retained ...' is adequate to plead an inferential case that the employer's reliance on his discharged employee's misconduct as grounds for terminating him was merely a pretext. 411 U.S. at 804, 93 S.Ct. at 1825 (emphasis added)." *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 283 n. 11, 96 S.Ct. 2574, 2580 n. 11, 49 L.Ed.2d 493 (1976).

**13.** Disparate treatment analysis requires that none of the participants in the decision-making process be influenced by racial bias. Thus, the motivations of both the Chief and of Runnerstrom are pertinent. If the Chief were not motivated by racial animus but Runnerstrom, his subordinate, were consciously recommending discipline only for blacks, the Chief's neutrality with respect to race would not cure Runnerstrom's racial bias, and a claimant could make out a prima facie Title VII disparate treatment claim. Moreover, just because Runnerstrom may not have known of prior similar violations and failed to recommend discipline, does not relieve the department as a whole of liability, if the Chief ever knowingly decided not to recommend discipline (which had been recommended by any other officer) for a similar violation by a white officer.

A prima facie case of discriminatory motive must show that either Runnerstrom or Gerwens was aware of prior uses of the Unit truck by white officers for personal business or prior instances in which unauthorized persons had been permitted to ride in the truck, and that the known violations were consciously overlooked.[14] For the purposes of this Title VII action, Sergeant Dietrich's previous tolerance of Unit truck use for personal business would be relevant only if it could be shown that either Runnerstrom or Gerwens knew of such practices and did not act to discipline rule violators.[15] As Jones has failed to adduce evidence of knowledge on the part of Runnerstrom or Gerwens,[16] he has failed to make out a prima facie case of disparate treatment.[17]

**14.** Jones' argument that the issue of whether Dietrich or Runnerstrom was supervisor of the Mounted Unit on November 2 is material, is unavailing. Even if Dietrich had been supervisor on that date, Jones would not make out a prima facie case of discrimination unless he could show that Runnerstrom, who recommended that he be disciplined, or the Chief, who acted on that recommendation, knew of, and condoned, prior similar violations. It is undisputed that Sergeant Runnerstrom, like any other higher-ranking officer, was authorized to discipline Jones for violations of any departmental rule. City police officers are subject to discipline by any higher ranking officer for rule violations committed in that supervisory officer's presence.

**15.** The district court found that, shortly prior to November 2, Runnerstrom "informed plaintiff that he would run the Unit 'by the book' and that *things would not be the same as they had been under Sergeant Dietrich.*" 677 F.Supp. at 1152 (emphasis added). This finding suggests that, at least at the time of transition of supervisory authority, Runnerstrom was aware that Dietrich had been more permissive generally than Runnerstrom intended to be. However, there is no reasonable inference from this general knowledge that Runnerstrom was aware that Dietrich had previously tolerated violation of the specific rules at issue. Moreover, if Jones had offered evidence that, at the time of the alleged violations under Dietrich's regime, either Runnerstrom or Chief Gerwens was aware of the violations but decided not to discipline, then Jones might have made out a prima facie case of discriminatory motive, i.e. such employees might be "similarly situated." However, no such evidence appears in the record. In any

## CONCLUSION

Plaintiff Jones has failed to make a showing of a genuine issue of material fact sufficient to establish the existence of disparate disciplinary treatment. Accordingly, the judgment of the district court is

AFFIRMED.

event, Jones has not advanced this argument in the district court or on appeal.

**16.** Indeed, the district court found that nineteen white police officers had previously been subject to discipline for untruthfulness, unauthorized use of a City vehicle, or failure to obey a direct order (in ten of the cases violators were given penalties of at least one-day suspension). 677 F.Supp. at 1152. The court further found that one white detective had been disciplined for misconduct by transfer out of the Detective Division—a specialty division like the Mounted Unit. *Id.*

**17.** Jones did offer evidence of two instances in which Sergeant Runnerstrom allegedly permitted officers to use the Unit truck for personal business. Specifically, Jones asserted that during the period between the second week of October 1985 and his transfer on December 8, Runnerstrom gave permission to white police officers to use City vehicles for personal business. The district court found that "Runnerstrom did allow two white officers to use the vehicle after plaintiff had been disciplined," but that "the officers used the vehicle in connection with Department business. One officer drove a city police car from his reporting station at the Police Barn to the Police Station for a temporary 'light duty' assignment. Another was permitted to use the truck to move personal belongings to the Barn after the officer agreed to live at the Barn for security measures." 677 F.Supp. at 1152. After reviewing the record, we conclude that the district court has articulated the only reasonable inferences with respect to these two incidents.