STATE OF CONNECTICUT *v.* DARRYL BRYANT
(7262)

DUPONT, C. J., O'CONNELL and FOTI, Js.

Argued April 13—decision released September 5, 1989

*Hyman Wilensky,* for the appellant (defendant).

*Geoffrey E. Marion,* deputy assistant state's attorney, with whom, on the brief, were *C. Robert Satti, Sr.,* state's attorney, and *John F. Cocheo,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after he had entered a conditional plea of nolo contendere to an amended information, of possession of cocaine with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b).[1] The defendant claims that the trial court erred in denying his motion to suppress. We find no error.

At the hearing on the motion to suppress, the court heard testimony from the defendant and the arresting police officer, Randy Gerovitz, and found the following facts. At approximately 11 p.m. on November 11, 1987, Gerovitz saw a Cadillac Seville, with New York license plates, swerve from side to side and make an illegal u-turn. Gerovitz suspected that the driver was

---

[1] The defendant has appealed pursuant to General Statutes § 54-94a, which provides: "CONDITIONAL NOLO CONTENDERE PLEA. APPEAL OF DENIAL OF MOTION TO SUPPRESS OR DISMISS. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

under the influence of alcohol and ordered him to pull over to the side of the road. Because it was dark, Gerovitz carried a flashlight and when he approached the car, he shined it into the passenger compartment. He observed the defendant, who was the driver, and four passengers in the car. He also saw a dented metal club-like object, which he suspected was a weapon, between the driver's door and the driver's seat. Fearing for his safety, Gerovitz ordered the defendant to get out of the vehicle. When the defendant stepped out, Gerovitz removed the metal object, which turned out to be a baseball bat and observed a second club-like object, resembling a sawed-off wooden pool cue, sticking up by the armrest between the two front seats. When Gerovitz told the defendant that he suspected these objects were weapons, the defendant assured him that they were not, and then offered to demonstrate for the officer how he used the baseball bat to prop open his trunk. The defendant directed Gerovitz to the rear of the car, explaining that he had removed the trunk's support bars to allow the car to be used as a demonstrator vehicle for stereo speakers in conjunction with his employment. When the defendant went to the trunk and propped it open with the baseball bat, Gerovitz stood close to the rear bumper and shined his flashlight into the trunk. The flashlight's beam fell on a partially open brown paper bag containing numerous plastic vials and end caps, which Gerovitz immediately recognized as the type of vials that are used to package the narcotic substance commonly referred to as "crack." Gerovitz then arrested the defendant. Because the vehicle's trunk could not be secured, the car was impounded and taken to the Groton police station. As a matter of routine procedure, the police conducted an inventory search at the station. The search produced additional drug paraphernalia and 484 vials containing a hard white substance, which was field tested and determined to be cocaine.

Several of the defendant's claims challenging the trial court's ruling on his motion to suppress are based on numerous brief statements of law without the analysis required by our rules of practice. See Practice Book § 4065. The defendant's remaining claims relating to his motion to suppress may be characterized in the following manner: (1) there was no probable cause to search the passenger compartment of his car and the use of a flashlight constituted a search; (2) he was not advised that he had a right to refuse to consent to the search of his trunk; and (3) there was no probable cause to search the trunk of his car. We find no error.

The defendant's first claim is that there was no probable cause to search his car at the scene of the traffic stop and that the officer's use of a flashlight to look into the car constituted a search.[2] It is well settled that objects within the plain view of an officer who is legally justified in stopping an automobile are subject to seizure and may be introduced as evidence. *State* v. *Krause,* 163 Conn. 76, 82–83, 301 A.2d 234 (1972). This standard applies to any objects within the car as long as they are observed from a lawful vantage point. Id., 83; *State* v. *Leonard,* 14 Conn. App. 134, 539 A.2d 1030, cert. granted, 208 Conn. 807, 545 A.2d 1104 (1988). When an officer discovers evidence in open view, that discovery is not considered a search. *State* v. *Federici,* 179 Conn. 46, 56, 425 A.2d 916 (1979); see also, 1 W. LaFave, Search and Seizure (2d Ed. 1989) § 2.2 (a), pp. 322–23.

Furthermore, an officer's use of a flashlight to look into a car does not constitute an illegal search. It is well established that when a police officer is in a public area and uses a flashlight to peer through a window into the dark recesses of an automobile at night, his action does

---

[2] We note that the defendant does not question the validity of the traffic stop.

not constitute a search. *State* v. *Graham,* 200 Conn. 9, 20–21, 509 A.2d 493 (1986); *State* v. *Federici,* supra, 56 n.6; *State* v. *Leonard,* supra.

In view of this clear precedent, the defendant's claim that there was no probable cause to search the passenger compartment of his vehicle must fail because the interior of the defendant's car was never "searched" at the scene of the traffic stop within the meaning of the fourth amendment. Both of the items found in the passenger compartment of the defendant's car at the scene of the traffic stop were within the officer's plain view. The bat was visible from his lawful vantage point just outside the driver's door. After seeing the bat between the driver's seat and door, Gerovitz feared that it could be used as a weapon and asked the defendant to get out of his car.[3] Once the defendant was out of the car, the sawed-off pool cue protruding from between the two front seats was immediately apparent.

The defendant's next claim is that Gerovitz did not advise him of his right to refuse to consent to open the car's trunk. This claim is meritless. The defendant's actions were entirely gratuitous and wholly unrelated to the officer's questioning. His request that Gerovitz follow him to the trunk and watch him prop it open implied his consent to the officer's view of the trunk's contents. *United States* v. *Gilbert,* 774 F.2d 962, 964 (9th Cir. 1985). Even if it is assumed, arguendo, that the officer asked and the defendant consented to a trunk search, the defendant's claim would still fail. Once

---

[3] It was well within the scope of the officer's investigation to ask the defendant to step out onto the street. "[O]ut of a concern for the safety of the police . . . officers may, consistent with the Fourth Amendment, exercise discretion to require a driver who commits a traffic violation to exit the vehicle even though they lack any particularized reason for believing the driver possesses a weapon." *New York* v. *Class,* 475 U.S. 106, 115–16, 106 S. Ct. 960, 89 L. Ed. 2d 81 (1985), citing *Pennsylvania* v. *Mimms* 434 U.S. 106, 108–11, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977).

a party consents to a search there is no onus on the officer to advise the consenting party of his fourth amendment rights or otherwise to make him aware of those rights. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); 3 W. LaFave, supra, § 8.2 (i), p. 210.

The defendant next claims that there was no probable cause to search the trunk of his car at the scene of the traffic stop. This assertion mirrors the defendant's first claim and, like that claim, is meritless. The vials of cocaine in the defendant's trunk were within the officer's plain view after the defendant voluntarily opened the trunk. Each item was found by happenstance while the officer performed his duties. Consequently, none of the items seized was the object of a search. We conclude that the items were seized as a result of a plain view observation by Gerovitz and, therefore, were not the products of a search as the defendant claims.[4]

There is no error.

In this opinion the other judges concurred.

---

[4] The defendant also alludes to the fact that the inventory search performed at the Groton police department was illegal. Although this issue was not briefed properly, it is worth noting that a warrantless search of an automobile is not unreasonable when it is conducted pursuant to an inventory of the car's contents incident to its impoundment. *State* v. *Nelson,* 17 Conn. App. 556, 568–73, 555 A.2d 426 (1989).