[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION IN RE MOTION TO SUPPRESS EVIDENCE
INTRODUCTION
Peter Ciarlo, a resident of Middlebury, Connecticut, moves to suppress under both the Constitution of the State of Connecticut and the Constitution of the United States two garbage bags each containing approximately ten pounds of CT Page 12499-DD marijuana. The bags were seized on December 2, 1994 without a warrant by members of the Waterbury Connecticut Police Department from the open bed of a Chevrolet pickup truck registered to and operated by Michael Pronovost. Since these seizures were the principal factual predicate for subsequent warrant authorized searches of Peter Ciarlo's 1993 Mercedes Benz automobile; his Middlebury home; and his place of business, Ciarlo's Car Emporium Car Wash at 1161 Wolcott Street in Waterbury, Ciarlo also complains that these warrant authorized searches were tainted and the items seized during those three subsequent searches ought also be suppressed as fruits of a poisonous tree.
The motion to suppress is denied.
FINDING OF FACTS
From the evidence deemed credible, the court makes the following findings of fact.
On December 2, 1994, Sergeant Neal O'Leary of the Waterbury Police Department received information from a confidential informant that Peter Ciarlo was going to deal in a large quantity of marijuana. O'Leary's informant further reported to him that Michael Pronovost was also going to deal in marijuana. Accordingly, Sergeant O'Leary assigned Detective Mark Deal to undertake a surveillance of Peter Ciarlo. Deal and Ciarlo know one another and Deal has suspected Ciarlo of trafficking in large quantities of marijuana for some time.
Upon receiving the assignment, Deal, in his 1987 Cherokee Jeep, took up a surveillance position near Ciarlo's Waterbury business location and shortly thereafter observed Ciarlo arrive in his white Mercedes. Deal communicated this information by telephone to O'Leary and while conversing with O'Leary from a pay phone, observed Ciarlo leave his business in the Mercedes. Although Deal was unsuccessful in locating Ciarlo immediately, the detective eventually journeyed toward the Middlebury, Connecticut neighborhood where Ciarlo resided and, while enroute, located Ciarlo operating his Mercedes in the general direction of his Middlebury home. Deal then observed Ciarlo drive his automobile into his driveway and park the vehicle next to his two-car garage. Shortly thereafter, Deal also saw Michael Pronovost, operating a Chevy pickup truck with an open bed, arrive at the Ciarlo property and park his truck adjacent CT Page 12499-EE to the Mercedes. Pronovost is employed by the City of Waterbury and works on a sanitation truck.
From a surveillance position on Fairhaven Drive where Ciarlo resides and at times with the aid of binoculars, Deal subsequently observed Ciarlo and Pronovost leave Ciarlo's garage with Ciarlo carrying with his two hands a garbage bag which he placed into the open bed of Pronovost's truck. Thereafter, Deal observed Ciarlo open the trunk of his Mercedes, take out another garbage bag and also place it in the open bed of the same truck. Shortly thereafter, Pronovost exited the Ciarlo homestead and headed toward Waterbury. Almost immediately upon the heels of Pronovost's departure, Ciarlo left in his Mercedes, but in the process of departing, observed Detective Deal sitting in his Jeep Cherokee. Thus Deal's surveillance cover was blown, but the pursuit of Pronovost began.
Deal in his jeep followed Pronovost driving his Chevy pickup truck down the meandering roads of Middlebury into Waterbury and onto an entrance ramp to Interstate 84 proceeding east with Ciarlo close behind.
Upon entering the interstate highway complex, Ciarlo forced Deal over to the shoulder of the entrance ramp and passed Deal. Upon coming up in back of Pronovost, Deal heard Ciarlo blowing his horn and making gestures designed to warn Pronovost of the detective's presence. Thereafter, Ciarlo sped east away from Pronovost and Deal on the interstate highway and Deal continued to follow Pronovost off I-84 and onto the Waterbury streets. During this pursuit, Deal observed Pronovost run several traffic lights and drive generally in a reckless manner. At one point in the pursuit, Pronovost became momentarily blocked by other traffic and Deal, displaying his badge and revolver, exited his vehicle and demanded that Pronovost leave his truck. However, Pronovost successfully maneuvered away from the traffic blocking him and continued to attempt to evade Deal through the Waterbury streets until Deal, using a portable radio, obtained assistance from Waterbury patrol units to stop Pronovost.
After the police successfully halted the truck, Deal approached the vehicle and observed from a street position the two garbage bags in the bed of the truck, one of which had been broken partly open. The outer garbage bag of one of the two bundles had a hole in it and there was also a hole in the clear plastic wrapping of the bundle inside the garbage bag. Because CT Page 12499-FF of these two holes, Deal could both see and smell the green plant-like material contained in the garbage bag and from his training and experience he determined that it was marijuana. Similar observations of the broken open garbage bag were made by a patrol officer, Gary Pace, who had been summoned to the scene to aid in the stopping of the truck.
Pronovost was taken into custody by Deal for reckless driving and was transported to police headquarters by another member of the Waterbury Police Department while Deal himself drove Pronovost's truck to the police station. There, another detective took some of the plant-like substance from the open garbage bag at the direction of Sergeant Neal O'Leary and tested it. The test revealed a positive reaction for marijuana. At the police station, the second and unopened garbage bag, which was knotted closed, was taken into the police station and the outer garbage bag was opened by Sergeant O'Leary whereupon he observed a bundle tightly wrapped in clear plastic of a green plant-like substance which he knew from his observation and smell to be also marijuana. Subsequently, the contents of both packages were tested and weighted at the state laboratory. For the purpose of this suppression hearing, the State and the defendant stipulated that this laboratory testing revealed the contents of each package to be marijuana and that each package weighed approximately ten pounds.
The seizures of both packages of marijuana were without warrant.
During the suppression hearing, Peter Ciarlo offered no evidence.
A SUMMARY OF ARGUMENTS SUBMITTED BY BOTH THE STATE AND PETER CIARLO
Peter Ciarlo in his Supplemental Motion to Suppress Evidence dated November 13, 1995 argues that he has standing to contest the police search and seizure of each of the two garbage bags found in Pronovost's truck because Ciarlo has a reasonable expectation of privacy "in the place searched or in the item seized." Id. at 5 citing to State v. Joyce, 229 Conn. 10 (1994) (warrantless testing of burned clothing violates state constitution). Ciarlo proceeds to then remind us that in this, the Constitution State, our Appellate and Supreme Courts have interpreted the warrant requirement in the Connecticut Constitution more broadly than federal courts have interpreted CT Page 12499-GG the fourth amendment. State v. Miller, 227 Conn. 363, 386-387
(1993) (warrantless search supported by probable cause of impounded auto at police station violates owner's Article First, 7 rights secured by the Connecticut Constitution); contraChambers v. Maroney, 399 U.S. 42 (1970) (similar fact pattern under the Fourth Amendment). Ciarlo relies upon Miller and alsoArkansas v. Sanders, 442 U.S. 753, 763, (1979); and State v.Edwards, 214 Conn. 570 (1990) for legal support that in this case the Waterbury Police needed a warrant to seize the 20 pounds of marijuana. The defendant further argues that since these seizures were illegal, the subsequent warrants authorizing searches and seizures of his Middlebury home; Mercedes Benz automobile; and his Waterbury place of business were tainted. Thus, he argues, under Wong Sun v. United States, 371 U.S. 471
(1963), any seizures occurring at these three places ought be suppressed as fruits of a poisonous tree.
The government agrees with Peter Ciarlo that he has a constitutionally protected expectation of privacy in his Middlebury home, his Mercedes, and his Waterbury place of business, but suggests that Ciarlo has no standing to complain about the seizures of the garbage bags of marijuana because "the defendant cannot show that he had a reasonable expectation of privacy that society considers reasonable when that area is the open bed of pickup truck owned by an individual other than the defendant himself." State's Preliminary Memorandum of Law Re:Defendant's Motion to Suppress Evidence dated November 13, 1995 at 2. The government argues further that even if this court concludes that Ciarlo has standing to contest the seizures of the two garbage bags from Pronovost's truck, these warrantless intrusions were based upon probable cause and hence permissible.[1]
 CONCLUSIONS OF LAW
Peter Ciarlo must prove standing in order to claim a violation of his asserted privacy rights under Article First, 7, of the Connecticut Constitution and under the Fourth Amendment. As far as we can discern from the existing jurisprudence and based upon the configuration of the issues submitted to us by the parties, this means, based upon Katz v. United States,389 U.S. 347, 361 (1967), that to prove a state or federal privacy violation, Peter Ciarlo must prove (1) that as the owner or custodian of the marijuana, he manifested a subjective expectation of privacy with respect to it; and (2) that CT Page 12499-HH expectation is one that society would consider reasonable.State v. DeFusco, 224 Conn. 627, 633 (1993).
On the evidentiary record submitted to us and based upon the factual findings made, we initially conclude that Peter Ciarlo failed to prove that either of the two garbage bags or the 10 pounds of marijuana contained in each were in any sense his. Actually, we know virtually know nothing about Ciarlo's relationship to the two parcels of marijuana other than, as we have already found, Ciarlo on December 2, 1994 delivered the two 10 pound bags of marijuana to the open bed of Pronovost's Chevy pickup; warned Pronovost on I-84 of the tailing police officer; and then fled the scene in his white Mercedes never again to make a privacy claim in the marijuana until this suppression hearing.
By Ciarlo's very conduct, as found by us, from delivering the marijuana to Pronovost at his home to fleeing from Detective Deal and Pronovost on Interstate 84, we conclude that Peter Ciarlo abandoned for state and federal constitution protection purposes any subjective expectation of privacy in the garbage bags and the 10 pounds of marijuana contained in each. SeeState v. DeFusco, 224 Conn. 627, f.n. 10 for state constitutional authority; State v. Mooney, 218 Conn. 85, 107, (1991), interpreting the fourth amendment. United States v. MichaelLee, 916 F.2d 814, 818 (2 Cir. 1990); United States v. McKennon,814 F.2d 1539, 1545-46 (11th Cir. 1987); United States v.Oswald, 783 F.2d 663 (6th Cir. 1986); United States v. Brown,473 F.2d 952 (5th Cir. 1973); St. Paul v. Vaugh, 306 Minn. 337,237 N.W.2d 365 (1975).
Although we have concluded that Ciarlo failed to prove that he had a subjective expectation of privacy in the 10 pound containers of marijuana, we also hold that even if he did, his expectation in these circumstances was not objectively one which society would deem reasonable. Both the federal and state governments have declared such large quantities of marijuana, as here, to be contraband. Thus, for a citizen upon these facts to expect a privacy interest in a container holding only declared contraband is objectively an illegitimate expectation and certainly not one which the people of the United States or Connecticut consider reasonable. State v. DeFusco, 224 Conn. 627
(1993) (no objectively reasonable expectation in privacy in containers of garbage left at the curb for collection under Connecticut Constitution); California v. Greenwood, 486 U.S. 35
CT Page 12499-II (1988) (no similar expectation under federal constitution);United States v. McKennon, 874 F.2d 1539, 1543-45 (11th Cir. 1987); United States v. Santopietro, 809 F. Sup. 1001, 1007-08
(1992). As the federal Supreme Court observed, the privacy interest in the possession of legislatively declared contraband is critically different from what the society considers reasonable. United States v. Jacobsen, 466 U.S. 109, 122-23
(1984).
Apart from his facial claims of privacy in the two garbage bags of marijuana, Peter Ciarlo failed to prove that he had any interest in the Chevrolet truck owned by Pronovost. Thus, the truck, as such, affords no further basis for standing in Ciarlo to contest the seizures of the marijuana. State v. Burns,23 Conn. App. 602, 611-12 (1990); State v. Manson, 13 Conn. App. 220
(1988).
Finally, although we have treated the two bags of marijuana for seizure purposes together, we note that when Detective Deal and Officer Pace observed from their positions on the street the marijuana in the broken open garbage bag in the open bed of Pronovost's truck, their "open view" of that contraband conferred upon them the right to seize what they saw and smelt to be marijuana. State v. Grillo, 23 Conn. App. 50, 54-55
(1990); State v. Bryant, 19 Conn. App. 626, 629 (1989).
CONCLUSION
Peter Ciarlo's motion to suppress the seizure of the two bags totaling 20 pounds of marijuana from Michael Pronovost's Chevrolet truck on December 2, 1994 is denied. Since the seizure of that marijuana by the police is the sole basis for the claimed taint of the three subsequent searches by warrant of Ciarlo's Mercedes, home, and Waterbury place of business, we also deny the motion to suppress the fruits of those searches since we conclude that no one of those three warrant authorized searches and seizures is legally infirm.
An order may enter accordingly.
WILLIAM PATRICK MURRAY, J. A Judge of the Superior Court